Kiniíade, J.
 

 The defendant was indicted for burglarizing an inhabited dwelling. He entered a plea of not guilty. The state offered evidence tending to sustain all the allegations in the indictment, and rested. Thereupon the accused moved the court for a directed verdict in his favor, on the ground that the evidence did not show that the accused had entered the dwelling in the night season, or-that he had entered by a forcible breaking, or that he had entered with any intention of committing a felony or of stealing anything of value, and upon the further ground that the evidence was insufficient to identify the accused. The court overruled the motion of counsel for the accused, who excepted to the action of the court. The accused then offered several witnesses, whose testimony tended only to sustain his claim of alibi and to establish his reputation for integrity. The accused then himself testified sustaining his claim of alibi, and then rested.
 

 The state offered no further evidence in rebuttal. Thereupon the accused renewed his motion for a directed verdict, on the same grounds. This motion was granted by the trial court, and the court thereupon dismissed the jury and discharged the accused, over the objections and exceptions of counsel for the state, who now ask this court to reverse the ruling of the trial court.
 

 The record clearly shows that the residence in question was an inhabited dwelling occupied at the time by the owner, Mr. Kuhlman, and his family. AJbout the hour of 10:45 p. m. the family and some
 
 *516
 
 visiting guests went to the second floor to retire for the night, Mrs. Kuhlman had occasion to go to the third floor, or attic, which was reached by a stairway leading thereto from the bathroom. As she attempted to do this she met two strange men coming down the attic stairs into the bathroom, one of them partially masked by a handkerchief tied over his face, and each man carrying a revolver in his hand. Mrs. Kuhlman screamed for help, and her husband hastened to her. The bathroom was fully lighted by means of a center electric light suspended from the ceiling. As Kuhlman entered the. room, he met the two strange men face to face, and found himself looking into the muzzle of a revolver aimed at him by the man who was not masked. Kuhlman backed out of the bathroom, followed by the two men and ran down the rear stairway near by, which led to the first floor. Prom the foot of the stairway he hastened to the front of the house and up the front stairway to the second floor, to get his revolver, with a view of getting a shot at the intruders from the second story window as they left the house by the rear door, near the foot of the stairway, down which' they had followed him. The two men made their escape from the rear part of the house before Kuhlman had time to accomplish the plan he had in mind. He then fired his revolver out of the window of the bathroom, to give alarm to the neighbors and to the police.
 

 The next time Kuhlman saw the accused, which, was about 48 hours later, was when he met him in the custody of the sheriff, and at that time Kuhlman identified him as the 'unmasked man he had met in the bathroom of his home, as stated. At the trial
 
 *517
 
 Kuhlman positively identified the same man in the courtroom.
 

 No doors or windows of the bouse bad been left open on tbe nigbt of tbe burglary. Tbe front' and rear doors were locked. Tbe side door on tbe ground floor was closed, but tbe evidence did not show affirmatively that it bad been locked. There was some evidence pertaining to footprints, which tended to show that tbe intruders bad entered by tbe side door. Tbe family was absent for two or three hours during tbe early part of tbe evening, at tbe home of relatives, whose home was next adjoining tbe Kuhlman home, and only about 60 feet away.
 

 There was no direct evidence tending to fix tbe exact time that tbe intruders actually entered the home; no evidence that anything bad been stolen by them before they made their escape, as stated. In this state of tbe evidence it is argued that it was tbe duty of tbe court to withdraw tbe case from tbe consideration of tbe jury, and discharge tbe accused. Tbe trouble with this position is that it wholly ignores all fair and reasonable presumptions arising from tbe facts proved. Under tbe rule in a criminal case, that the evidence must not only be consistent with tbe guilt of tbe accused but must, also be inconsistent with bis innocence, it is said that every presumption must be indulged in favor of the accused; that is to say, in this case, that as against tbe charge of burglary, breaking into an inhabited dwelling in the nigbt season, it must be presumed, in tbe absence of evidence to tbe contrary, that tbe accused did not enter the dwelling in tbe nigbt season; that if be might have entered without breaking any lock, then be did not break into the building at
 
 *518
 
 all; that as he had not stolen anything, he must be presumed to have had no intention of stealing anything of value; and, along this same, line of reasoning, it is said that all the other charges in the indictment might be likewise extinguished.
 

 We are not aware of any case which carries the presumption of innocence to the scope claimed in this case. There are a few facts so well known to everybody that even a court must take judicial knowledge of them. One is that burglars are not in the habit of coming in before sunset in order that their contemplated operations may not fall under the ban of the burglary statute, because not committed in the night season. The call of the burglar is not for more light, but less light, and he very much prefers the artificial to the natural light, and he is generous enough to furnish the artificial himself in the form of a dark lantern or flashlight. This procedure assists in preventing identification, and is a great aid in a quick get-away; and, furthermore, it gives the burglar sufficient light, and just where he most needs it, to effectively use his revolver if occasion requires. Like the wolf, the burglar knows intuitively that the night season is the time to prowl.
 

 These men seem to have omitted the courtesy of registering in, so that the family might have exact information as to the time of their arrival, and so not accuse them, if detected, of something that they did not have in mind. The owner of the house, when he met them in the bathroom, did not recognize them as invitees, licensees, or guests of any kind. He knew instantly that they were not friends of his. One look into the muzzle of the revolver aimed at him was all the social intercourse that he cared to
 
 *519
 
 have with them. They were strangers to him, and he had no doubt about the purpose or method of their call. He drew the same conclusions, from the established facts, that the jury might have drawn from the same facts had the case been submitted to the jury; that is to say, that they were burglars and were there to carry on the business of burglary in that home; and they were armed against any emergency that might develop. For obvious reasons, they made no explanation of their presence or their intentions. They were surprised, and Kuhlman was astonished, but all three understood the situation perfectly. The silence which prevailed was made more eloquent by the revolver. The maxim,
 
 “Bes ipsa loquitur,”
 
 covered the situation. Words were unnecessary.
 

 On cross-examination at the trial, the accused admitted that a few years before, and in the same court, he had pleaded guilty to a charge of burglary, had been sentenced to the Ohio penitentiary, and had there served 18 months of his imprisonment term, when he was paroled. He also admitted that he had several times since been arrested for minor offenses. These facts were all before the jury. The defense was alibi and good reputation for integrity — not that he came in earlier in the day, or that he overstayed his welcome, or that he had no intention of committing a felony, or anything along that line. His defense was, and properly so, if true, that he was not there at all. If the jury had been permitted to consider the ease, and had found against him on his defense of alibi, then his case would have been unfortunate indeed, with the owner of the house positively identifying him in open court as the man with a
 
 *520
 
 masked companion, each having a revolver, found in his home near the midnight hour, as stated. The jury might have found him guilty of the charge set forth in the indictment, and had they done so, with a record siich as made in this case, the trial court would have been fully justified in overruling a motion for a new trial based on the ground that the verdict was not sustained by sufficient evidence. The guilt or innocence of the accused was a question to be decided by the jury, and not by the court. The trial court was clearly in error in dismissing the jury and discharging the accused.
 

 Exceptions sustained.
 

 Maeshall, C. J., Day, Allen, Robinson and Matthias, JJ., concur.