THE STATE OF OHIO, APPELLEE, *v.* SPROUSE, APPELLANT.

(No. 260—Decided March 6, 1968.)

*Mr. Thomas DeLay,* prosecuting attorney, for appellee.

*Mrs. Mary Bone,* for appellant.

GRAY, J. (Presiding.) This cause is in this court on appeal from a judgment of the Common Pleas Court of Jackson County finding defendant guilty of breaking and entering.

Defendant, feeling aggrieved by this action of the trial court, filed his notice of appeal and assigned the following errors:

"1. The court erred in overruling the motion of the defendant to discharge the defendant and to dismiss the jury for the reason that the state had wholly failed to prove the charge of breaking and entering at the close of the state's case.

"2. The court erred in overruling the motion of the defendant to take from the jury the question of breaking and entering for the reason that the evidence adduced did not support the charge of breaking and entering.

"3. The court erred in refusing to discharge the defendant at the end of the state's case and erred in overruling the motion to discharge the defendant for the reason that the state failed to establish venue.

"4. The court erred in allowing the state to open up their case and establish venue.

"5. The court erred to the prejudice of the defendant in not allowing the defendant to have the right to have items No. 1 and No. 5 examined by a laboratory technician.

"6. The court erred in allowing the wife of the defendant to testify over the objection of the defendant.

"7. The court erred in refusing the * * * [jury] a view of premises and also view of the safe.

"8. The court erred to the prejudice of the defendant in overruling the motion of defendant for the reason that the state at the close of all of the evidence had wholly failed to prove the charge of breaking and entering and for the further reason that the evidence adduced did not support the charge of breaking and entering.

"9. The verdict was contrary to law and against the weight of the evidence.

"10. The court erred in failing to set aside the verdict upon motion for a new trial and to grant appellant a new trial.

"11. The court erred in the admission, over defendant's objections, of certain evidence of the prosecution.

"12. For other errors apparent from the record."

The court will consider assignments Nos. 1, 2, 8, 9, and 10 together. We find no error in any of these assignments of error.

Where the evidence in a criminal case tends to sustain all the essential elements charged in the indictment, it is not error for the court to overrule defendant's motion to withdraw the case from the jury and discharge defendant. *State* v. *Axe,* 118 Ohio St. 514; *Painesville Utopia Theatre Co.* v. *Lautermilch,* 118 Ohio St. 167; *Cooper* v. *State,* 121 Ohio St. 562.

The third and fourth assignments of error will be considered together. We find no error here. In the prosecution of a criminal case, it is not essential that the venue of the crime be proved in express terms, provided it be established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was committed in the county and state as laid in the indictment. See *State* v. *Dickerson,* 77 Ohio St. 34, 122 Am. St. Rep. 479, 13 L. R. A. (N. S.) 341; *State* v. *Neff,* 104 Ohio App. 289; *State* v. *Stewart,* 79 Ohio App. 340; *State* v. *Schroyer,* 66 Ohio App. 30.

The fifth assignment of error is not well taken. Defendant did not timely request analyses of the pieces of evidence. He had the right to and did cross-examine the expert as to procedures and techniques used. He has shown no prejudice to himself by any action taken by the prosecution or the court in his trial in this respect.

Assignments of error Nos. 6 and 11 will be considered together. The record does not disclose any violation of defendant's rights to his prejudice.

The wife of defendant was called to testify as to defendant's whereabouts under his claimed alibi. The majority of this court believes that under the provisions of Section 2945.42 Revised Code, such testimony was competent. In part this section states:

"* * * The presence or whereabouts of the husband or wife is not an act under this section. The rule is the same if the marital relation ceased to exist."

The fourth question propounded to defendant's wife was the following:

"Q. And directing your attention now, Mrs. Sprouse, to on or about the 27th day of July, 1965, will you tell the ladies and gentlemen of the Jury where you were about—

"Mrs. Bone: I object.

"Q. (continuing) five o'clock?

"Mrs. Bone: I want to note my objections for the record for the reason she is the wife of the defendant and the law of Ohio states a wife may not testify for or against a husband in a criminal case.

"By the Court: Objection overruled."

In examining the question presented, it is apparent that the testimony attempted to be elicited was in regard to the wife's whereabouts on July 27, 1965, and at that time nothing was said about defendant. True, the prosecuting attorney was laying a foundation to demolish defendant's alibi, but he had not arrived at the point of fixing defendant's whereabouts under his claimed alibi when the objection was made.

Defendant did not enter another objection of any kind to any of defendant's wife's testimony.

Defendant cannot expect the trial judge to enter objections for him at the proper time and on the proper grounds, if any existed.

The trial judge is the governor of the trial proceedings. He is required to maintain strict impartiality and not to make a record in the case for either litigant.

Objectionable evidence must be called to the court's attention before error can be predicted thereon.

Even if part of the evidence offered had been objectionable, the question was not preserved and there would be no error here. *State* v. *Fox,* 133 Ohio St. 154, 161, 162, stands for the proposition, among others, that:

"* * * Whenever evidence is offered which is only partly objectionable, the complaining party must point out the objectionable portion specifically. Otherwise all of it may be admitted. * * *"

The real damage to defendant's case was done on cross-examination of the wife of the defendant. The following excerpts are good examples of what should *not* be done:

Cross-examination by Mrs. Bone of Katie Sprouse, wife of defendant:

"Q. I'd like to ask you this question, if you ever recall making a statement to me, my secretary and his mother that he was at home—A. If you had a gun pointed at your head, what would you do?

"Q. Who had a gun? A. Willard had, he said if I didn't tell you that, he'd kill me.

"Q. Wasn't Willard in jail? A. He threatened he'd kill me today for telling against him, you know you did, Willard.

"Q. Do you recall telling me in the office that you were sorry, that you didn't want to do this, but the sheriff was making you come in, they brought you in, didn't they? A. No, I don't—they brought me in, sure, but they subpoenaed me, they brought me in and I may go back to the hospital, if he gets out, but he's as guilty as God made little apples, he and Sammy Clark was together, he even told me himself that he was in there.

"Q. Do you recall swearing to me, under oath, where you said that he didn't? A. You said was Willard at home and Rolla Smith made a statement that Willard was at home, but Rolla Smith wasn't there playing cards.

"Q. There was nobody there to make you make this statement—A. You bribed me, if I didn't you'd have my children taken away and he had said he'd kill me.

"Q. I did not. A. Yes, you did."

Defendant claimed an alibi which was that he, his wife, and his uncle, Rolla Smith, played cards all night, which covered the period of time when the alleged crime took place.

The cross-examination by Mrs. Bone of Mrs. Sprouse continued:

"Q. Which policeman? A. Well, it was Tom Bane and I think the other one was Williams, I think it was Williams, then Elba Ross came on the motorcycle and he didn't have to search my house because I done give him the clothes that Willard had hid.

"Q. All right. Now, on these clothes, what clothes did you give him? A. Willard came home and changed clothes, same as Sammy Clark did and Sammy burned his out in my back yard and I took papers for him and Willard had white stuff on his white t-shirt and his pants and shoes and he hid them back in my bar corner and when Elba Ross came, I gave them to him.

"Q. You say there was a lot of white stuff, on those clothes? A. A good bit, yes.

"Q. What about the shoes? A. He rolled them up in the pants and I took them out.

"Q. What kind were the shoes? A. Black leather pumps.

"Q. And did you assist Mr. Clark in burning his clothes? A. I did.

"Q. Did you know he had broken into the City Building? A. Yes, I did because Willard said 'I suppose the police will be looking for me in the morning' and I said 'what's the matter with you, what have you done' and he was drinking and he said 'me and Sammy was in the Mem-

orial Building' and he said he had a pocketful of change and I know he done it.

"Q. And you assisted Mr. Clark to burn his clothes? A. Sammy asked me to, that's the reason I burned them, he was with Willard and they told me to.

"Q. Did you see any money—did they have any money? A. A little change, yes.

"Q. Anything else? A. No, they said they got their bellies full of coca-cola, but they didn't bring any home, they went in there to—

"By the Court: I think you've answered the question."

The record shows that a white powder was on the floor and in the safe which was broken into. The record further shows that it was powdered gypsum and quartzite used as insulation in the safe.

Nowhere does the court in *Rosser* v. *State,* 10 Ohio Law Abs. 69, comment directly upon "The presence or whereabouts of the husband or wife is not an act under this section."

In fact the court patently ignores that sentence of Section 13444-2, General Code, in its opinion. We are at a loss to understand this. The Legislature has plainly stated that "The presence or whereabouts of the husband or wife is not an act under this section." Statutory construction requires us to conclusively presume that the Legislature in enacting this section said what it meant and meant what it said. In taking the testimony of husband or wife concerning the presence or whereabouts of the other out of the operation of the statute the way was made clear to introduce testimony by the wife as to the presence or whereabouts of defendant without any of the restrictions imposed by Section 2945.42, Revised Code, in other instances.

It is very apparent in reading the opinion in *Rosser* v. *State, supra,* that the wife's testimony went far beyond facts concerning his presence or whereabouts on the day in question. The facts as stated in the opinion show that she testified that he made home "brew" and was engaged in the bootleg business. Her testimony as to his whereabouts on

June 9, 1929, was inextricably intertwined with testimony concerning his bootleg business venture. Here we have no such problem. On direct examination, the testimony of Katie Sprouse was confined to facts concerning the whereabouts and presence of defendant on July 27, 1965.

Since the facts in *Rosser* v. *State* are so dissimilar to the facts in our case the majority of the court feel that the decision is not pertinent to the case at hand.

Assignment of error No. 7 is not well taken. This matter was discretionary with the court. In any event, the record shows that conditions were different at the time of trial than at the time of the breaking and entering. See *Calloway* v. *Maxwell, Warden,* 2 Ohio St. 2d 128. The court did not abuse its discretion; an adequate reason appears in the record for the decision of the court in this respect.

A majority of this court finds no prejudicial error apparent on the face of the record; therefore, the judgment is affirmed.

*Judgment affirmed.*

ABELE, J., concurs.

TROOP, J., dissenting. I regret that I find it necessary to dissent from my colleagues, but in the instant case the admission of the testimony of the wife of the defendant over objection constituted prejudicial error.

Section 2945.42, Revised Code, gives authority for one spouse to testify against the other in certain named actions, prosecutions and proceedings. The actions are specific and constitute an exception to the well-established common-law rule. The list of specified actions must not be expanded by interpretation, and the proposition that "presence or whereabouts" is not an act as contained in the section may not be used for that purpose.

The case of *Rosser* v. *State,* 10 Ohio Law Abs. 69, decided by this court, is strikingly similar to the instant case. In a summary of the facts, the court said, "She further

testified as to the whereabouts of her husband when the officers made the raid at their home on June 11. She also gave further damaging testimony."

At page 69 the court says, "The class of cases in which the wife is a competent witness against her husband is limited to those specific cases mentioned in the statute." A little farther on, the court observes that the Legislature has not deemed it wise to enlarge the class of cases in which one spouse may testify against the other to include the particular type of case being reviewed. The Court of Appeals held that the testimony of the wife should have been excluded "on the ground that the wife was incompetent to testify against her husband in this case." The court said her testimony was prejudicial, adding "this was fatal error."

In view of this court's decision in *Rosser,* the judgment of the trial court in the instant case should be reversed and the cause remanded for a new trial.

TROOP, J., of the Tenth Appellate District, sitting by designation in the Fourth Appellate District.