THE STATE OF OHIO, APPELLEE, *v.* WHITLEY, APPELLANT.

(No. 310—Decided January 9, 1969.)

*Mr. Elmer Spencer,* prosecuting attorney, for appellee.
*Mr. William P. Hopkins* and *Mr. Henry E. Sheldon,* for appellant.

GRAY, J. Defendant was indicted on two counts of murder in the first degree of Orel Meadows. He was found guilty on both counts. Mercy was recommended by the jury on each count. A motion for new trial was overruled. Defendant, feeling aggrieved by this result of his trial, filed his notice of appeal and assigned the following errors:

"1. Where, in a first degree murder prosecution based largely, if not entirely, on circumstantial evidence, the totality of circumstances are as consistent with the accused's innocence as with his guilt, a finding by a jury of 'guilty as charged' is contrary to law and against the manifest weight of the evidence because the same is based on mere suspicion alone.

"2. Where, in a felony murder prosecution, the totality of factual circumstances and evidence creates inferences of innocence equally as strong as those of guilt, the state fails to establish an accused's guilt beyond a reasonable doubt and a verdict finding in favor of the state is contrary to law and against the manifest weight of the evidence.

"3. Where, in a first degree murder prosecution, the court permits over objection by defense counsel, the jury to hear and consider testimony of witnesses concerning al-

leged threats made by the accused on dates unknown but prior to the date of the incident in question to kill three unidentified persons, prejudicial and reversible error occurs.''

Jack Branham lived near Orel Meadows, the victim, in Adams County. He was a farmer 83 years of age. He had known defendant, Neil Whitley, aged 35, all of Whitley's life.

On May 24, 1967, while picking greens in a field, he was shot at by defendant. Several of the bullets struck the ground near his feet. The bullets were fired from the road nearby. Defendant was standing in the road behind his car on the road overlooking the field. The area was open, and there were no bushes, trees or impediments obstructing the view of either of the two men of the other. Branham said: ''You cowardly son-of-a-bitch if you got anything again me come on down here and we will settle it.'' Defendant entered his car and drove away.

Branham later went to the place where the car was stopped and found six empty shell casings.

Virgina Stambaugh, who lived nearby, was washing deceased's car on May 24, 1967, at her home which fronted on route No. 781. During that time she saw a man in a white shirt drive by several times, slow down and look at the house. While she was washing the car, several bullets whizzed over her head. She did not recognize the shooter as defendant. She told him to quit. He did and left the vicinity. At that time, the deceased, brother-in-law of Virginia Stambaugh, was running a tractor in a field nearby, preparing some land for planting corn.

A short time later, when she was feeding her dogs, she did not hear the tractor running. She looked for it and saw that it had run into the brush near a creek and had stopped. At that time she saw a man running from the tractor with a rifle in his hands. He was wearing a white shirt. The time was approximately 4 p. m.

A short time later, deceased, Orel Meadows, was found slumped over the steering wheel of the tractor. He had been shot in the back of the head. He was unconscious then and was dead on arrival at the hospital.

Carey Tolle testified that defendant had been drinking when he saw him about 5 p. m. on May 24, 1967, and at that time defendant said that the law was going to be after him.

Tolle testified that the shoes of defendant were muddy and his trousers were wet to his knees.

Near the tractor, and on a creek bank, there was a place about three feet in diameter where the vegetation had been crushed down. Footprints were there, but they were unidentifiable. There was evidence that someone had been smoking at this place. Measurements showed that from the point where the tractor left a straight line in plowing to where it was found in the brush was 360 feet, and the distance from the point where the tractor started to veer to the area where the vegetation was crushed was 227 feet.

Spent shell cases were gathered from the following locations: (1) the six in the road near the field where Jack Branham was picking greens, (2) the three spent shell cases found on highway 781 in front of the home of Virgina Stambaugh, and (3) the single spent casing which the sheriff ejected from the rifle in the Ramsey yard when defendant was arrested. Mr. Maxey of the Bureau of Criminal Identification testified that all the above spent shell casings were fired in the same gun which was the same gun that was found in the rear deck of defendant's automobile when he was arrested.

It was stipulated by both parties that the soil taken from defendant's shoes and a soil sample taken from the scene of the crime matched in color, texture and physical qualities.

It was developed in the record that during the week of May 15, 1967, defendant said that he was going to kill three men. About nine p. m. on May 24 he said that he had killed one man and was going to kill two more.

At about 9 p. m., just before his arrest, defendant told Ray Ramsey that he had murdered a man and that he was going to the red brick building, i. e., the electric chair.

Shortly thereafter he was arrested by the sheriff.

It is admitted by defendant and his attorney that defendant was advised of his constitutional rights and that all statments made by defendant to the sheriff were made voluntarily.

On the way to jail after his arrest defendant asked the sheriff if he were going to charge defendant with murder. Defendant then asked the sheriff, "How long did the old man live?"

When nearing West Union defendant said to the sheriff, "Why don't you shoot me. I ain't no damn good and everything will be over then."

The evidence was developed that defendant when apprehended was carrying a wallet belonging to deceased. In the wallet was $22. The widow of the victim testified that he normally carried a much larger sum than that and particularly so on May 24, 1967, because on that day he was dealing for another car.

Defendant's flight from the scene of the crime exhibited *mens rea.*

"Flight from justice, and its analogous conduct, have always been deemed indicative of a consciousness of guilt. * * *

"It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." II Wigmore on Evidence (Third Ed.) 111, Section 276, and cases cited.

Assignments of error Nos. 1 and 2 are overruled.

Where the evidence in a criminal case tends to sustain the essential elements charged in the indictment, it is error for the trial court to withdraw the case from the jury and discharge the defendant. *State* v. *Axe,* 118 Ohio St. 514; *Painesville Utopia Theatre Co.* v. *Lautermilch,* 118 Ohio St. 167; *Cooper* v. *State,* 121 Ohio St. 562.

We now come to the consideration of the third assignment of error.

Defendant complains that the testimony concerning threats to kill three men should have been held inadmissible by the trial court, as no threats were shown specifi-

cally against deceased. Under some factual situations some courts have so held, but each case must be judged on its own facts. We believe that under the facts before us the testimony was admissible.

We do not believe that it is necessary to show at the time this evidence was admitted that the premeditated malice of defendant already had selected its victim. We are of the opinion that such declarations should not be excluded because they are general, or because at that time the accused did not choose to fully divulge his plans. At that time, his statements indicate his purposefulness and his intentions, from which the jury could infer his malice.

The mere fact that "it is generic" or points to a broad class of acts does not destroy its relevancy and consequent admissibility. Even though the threat was general in its motive—to kill three men and not specifically Orel Meadows—yet if it indicates a general malicious intent it should be admissible under the circumstances of this case.

We believe that on the trial of an indictment a previous crime threatened or committed by defendant can be proved where it is connected with the one charged in the indictment and sheds light upon the motive of defendant or where it forms part of a chain of facts so intimately connected that the whole must be heard in order to interpret its several parts.

It must be remembered that during the week of May 15, 1967, defendant said that he was going to kill three men. At about nine on the night of May 24, 1967, defendant said "I have killed one man and I am going to kill two more."

This evidence should have been admitted to show defendant's malicious and belligerent condition of mind toward mankind in general and that the homicide was intentionally committed. Under the particular facts of this case we are of the opinion that it would be a travesty upon the law to hold that it was prejudicial error to admit it. For these reasons, the judgment is affirmed.

*Judgment affirmed.*

CARLISLE, P. J., and ABELE, J., concur.