The State of Ohio, Appellee, v. Shepard, Appellant.

(No. 248—Decided July 17, 1968.)

*Mr. Robert H. Huffer*, for appellee.
*Mr. Kenneth M. Robbins*, for appellant.

Gray, J. This cause is in this court on appeal from a judgment of the Court of Common Pleas of Pickaway County overruling a motion for a new trial on the basis of newly discovered evidence, and the assignment of other errors.

A jury found defendant guilty of armed robbery.

Defendant, feeling aggrieved at this result of his trial, appealed to this court and assigned the following errors:

"1. Newly discovered evidence, material to this defendant, which with reasonable diligence, he could not have discovered and produced at the trial as shown by the evidence in support of the motion for a new trial.

"2. Irregularity in the proceedings of the court by which the defendant was prevented from having a fair trial.

"3. The verdict and judgment of sentence imposed thereunder is contrary to law and against the manifest weight of the evidence.

"4. There was error in the court's charge to the jury."

The record of the trial shows that on September 30, 1964, a complaint was made to the Ohio State Highway Patrol by an unidentified motorist that the driver of a Corvair automobile was driving in a reckless manner on U. S. Route 23. Patrolman Dean F. Richardson was assigned to investigate the complaint at 11:27 p. m. on that date. The patrolman stopped the red Corvair on U. S. 23 at 11:31 p. m. At that time defendant was driving the car and there were only two men in it. One of the two men was wearing a plaid shirt. The patrolman released the

driver of the car at 11:34 p. m. He also testified that defendant had been drinking but that he permitted defendant to continue driving. The car was owned by defendant's wife, Carol.

At 11:43 p. m. the patrolman was advised by radio that there had been a robbery at the Logan Elm Tavern on Route 23, which was nearby.

Mrs. Betty Scott testified that she was working at the Logan Elm Inn six miles south of Circleville on U. S. 23 on September 30, 1964. She testified further that between 11:30 and 11:40 p. m. on that date she was robbed at gun point of all the paper money that was in the cash register in the Logan Elm Inn. The robber was identified as Glendon Brown. Jean Skinner, who lived in an apartment near by, heard a car stop in the rear of the inn, which was unusual for customers to do. She investigated. A man got out of the passenger side of the car, took off a red and white plaid shirt and threw it in the back seat of the car. Jean Skinner was standing in the dark and could not be seen. He then spoke to someone in the car, slammed the car door shut and entered the Logan Elm Inn. Someone sitting under the steering wheel of the car lit a cigarette. The motor was left running in the small red car. The red shirt was later identified as the one Glendon Brown took off. A security light lit the entire area. In about fifteen minutes she heard the car drive away. She identified the car as the one driven by defendant when stopped by the patrolman.

Hubert Parsons was sitting at the bar when the holdup occurred. He identified the robber later at the Circleville police station as the holdup man. He was Glendon Brown.

Later that night defendant and Brown were picked up at the Top Hat, a bar in Circleville.

Defendant, for his defense, alleges that he was so drunk that he did not know what occurred or did not know where he was. He stated that he went to sleep in the rear seat of the car just after the patrolman stopped the car at 11:31 p. m. and was not aware of the holdup or the incidents surrounding it. Defendant alleges that Brown woke him up behind the Top Hat.

On the morning of October 1, 1964, at about 1:37 a. m.,

defendant was apprehended by Sgt. Rod List of the Circleville Police Department as he and Glendon Brown were backing the red Corvair out of a parking lot near the Top Hat Tavern. Defendant was taken from behind the steering wheel of the car. The only other person in the car was Glendon Brown. Sgt. List identified the red and white shirt taken from the back seat of the car, which Brown had thrown there.

Dorothy Amman, a barmaid at the Top Hat, retrieved a .22 caliber revolver from under the piano at the Top Hat. Mrs. Amman testified that Glendon Brown had the revolver in his belt under his "T" shirt when he arrived at the Top Hat. When Brown was ejected from the Top Hat the gun was knocked under the piano. Defendant came back to the Top Hat around 1:40 a. m. to look for the "toy gun," as he described it. Mrs. Amman saw Brown and the defendant arrive at the Top Hat together.

This gun was identified by Betty Scott as the one used in the holdup at the Logan Elm Inn.

Sgt. List took five bullets out of the gun. Taken from the red Corvair was a box containing 44 shells of .22 caliber.

Sgt. List further testified that defendant was under the influence of alcohol when apprehended but that he was not unsteady on his feet; his eyes were not bloodshot; his speech was not slurred. He was not in such a condition that Sgt. List felt that he should have been arrested for being under the influence of alcohol.

The Supreme Court, over 100 years ago, in the case of *Hess* v. *State*, 5 Ohio 5, 10, made a statement that is relevant to this case. It is as follows:

"* * * Crimes of any magnitude are rarely committed without affording vestiges, by which the offender may be traced; and very often the means he adopts for his security, turn out to be the most cogent arguments of his guilt. * * *"

On the hearing on the motion for new trial defendant stated that he wanted to represent himself.

A number of affidavits were filed by defendant in support of his motion. One affidavit was made by Janet Johnson. In effect it pertains to the condition and whereabouts

of defendant on *"September 31, 1964"* (*sic*). Janet Johnson was called to testify under oath. When she appeared to testify, defendant immediately asked for the services of a lawyer. This request was not granted, as he had theretofore said he did not want one.

The gist of Mrs. Johnson's affidavit is that on the night of *"September 31, 1964,"* defendant was very drunk. Mrs. Johnson had been drinking too.

Defendant's exhibit A is a handwritten purported extract of page 55 of a book by Dr. Marvin A. Block entitled "Alcoholism, Its Facts and Phases."

Defendant's exhibit B is an affidavit of William P. Fox. It is a testimonial of what drink did to him.

Defendant's exhibit C is an affidavit of Carol Shepard, a nurse, wife of the defendant, who relates what she has observed as a nurse concerning alcoholics. The content of the affidavit is the same as her testimony.

Defendant's exhibit D is an affidavit of George Herron who relates what drink has done to his memory.

Defendant's exhibit E is an affidavit of Charles Zickafoose. It is of like tenor.

Defendant's exhibit F is his affidavit. It reiterates the defense he maintained at his trial.

In sum, the affidavits at best are merely cumulative as to the defense he interposed at his trial. On the other hand, we are of the opinion that these exhibits offer no evidence of probative value. They would in nowise change the result. When Janet Johnson testified as to the whereabouts of defendant on *"September 31, 1964,"* she was vague and evasive. There was no newly discovered evidence material for the person applying. Section 2945.80, Revised Code. See *Loeffner* v. *State*, 10 Ohio St. 598.

The trial court did not err in overruling defendant's motion for a new trial on the basis of newly discovered evidence. In *State* v. *Petro*, 148 Ohio St. 505, the Supreme Court, in the syllabus, stated:

"To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered

since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. * * *''

Defendant did not meet the tests for a new trial as stated above.

The first assignment of error is overruled.

Let us now consider assignment of error No. 2.

On direct examination defendant testified that in 1961 he was indicted for forgery. He pleaded guilty. He was placed on probabtion. It was revoked. Defendant claimed that it was revoked because he breached the peace. It was developed on cross-examination that he was charged with issuing a check with insufficient funds. His probation was then revoked. The incident of breach of peace occurred after the latter incident.

In the second branch of this assignment of error defendant complains of error in that the prosecution went into the matter of a possible forgery of defendant's wife's name to a check. No objection was made to any of these questions. Defendant thereby waived any possible error.

The error assigned in the third branch of this assignment of error is without merit.

Therefore, all three branches of this assignment of error are overruled.

Defendant's third assignment of error is that the judgment of sentence imposed is contrary to law and against the manifest weight of the evidence. We overrule this assignment of error for the reasons hereinbefore stated.

Where, as in this case, the evidence tends to sustain all the essential elements charged in the indictment, it is error for the trial court to withdraw the case from the jury and discharge the defendant. *State* v. *Axe*, 118 Ohio St. 514; *Painesville Utopia Theatre Co.* v. *Lautermilch*, 118 Ohio St. 167; *Cooper* v. *State*, 121 Ohio St. 562.

Defendant was indicted as a principal under the authority of Section 1.17, Revised Code, which states:

''Any person who aids, abets, or procures another to commit an offense may be prosecuted and punished as if he were the principal offender.''

Under the facts developed the jury was justified in finding defendant guilty. He was an aider and abettor.

The burden of proof of the claimed errors is upon defendant. He has not sustained such burden.

The fourth assignment of error is that part of the court's charge is erroneous. After completion of the general charge to the jury, the following dialogue occurred between the trial judge and each attorney.

Judge Ammer: "* * * Does either the state of Ohio or the defendant have anything further upon which they wish the court to charge?"

By Mr. Huffer: "The state has nothing."

By Mr. Thomen (Counsel for defendant): "Nothing, your Honor."

Defendant has lifted part of the trial court's charge out of context. When the full charge of the court is read it is apparent that no error was committed.

The court explained in full the meaning of the term "aider and abettor" as applied to the facts in this case. In explaining the term "aider and abettor" the court used the following language:

"His mere presence however, was not sufficient to make him an accomplice. He must have done something more. He must have incited, or assisted or encouraged the other person to do the criminal act in one of the ways mentioned."

When the above language is read in conjunction with all the other language of the charge pertaining to the law of aider and abettor it is obvious that this assignment of error is without merit.

Finally, defendant raises the question that Hubert Parsons, one of the persons sitting at the bar during the holdup, did not see the gun that was used. The testimony showed that there was a patron between Parsons and Brown, the holdup man. Further it was shown that Brown placed both hands on the bar and cupped his hands over the .22 caliber revolver so it could not be seen from the side. Betty Scott, the holdup victim, saw the gun.

The court at this time wishes to comment on some other matters which were developed by the testimony.

Glendon Brown and David Shepard were both inmates of the Lebanon Correctional Institution at the same time and knew each other while there.

Brown pleaded guilty to unarmed robbery, which was accepted by the prosecution. Shepard, maintaining his innocence to the bitter end, insisted upon going to trial on the charge of armed robbery, which resulted in his conviction on that charge. Shepard was given the same opportunity to plead guilty to unarmed robbery. He refused, with the above result.

In *State* v. *Petro*, 148 Ohio St. 473, in the first paragraph of the syllabus it is stated:

"On the appeal of a criminal case, a judgment against the accused should be affirmed unless the reviewing court finds that it affirmatively appears from the record that the accused was prejudiced by error or prevented from having a fair trial."

Nothing appears in the record that the accused was prejudiced by error or prevented from having a fair trial.

The verdict of the jury was eminently just. Defendant received a fair trial. Therefore, the judgment is affirmed.

*Judgment affirmed.*

CARLISLE, P. J., and ABELE, J., concur.