JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Dante Tait appeals from his convictions for aggravated robbery with firearm specifications and carrying a concealed weapon. For the reasons set forth below, we affirm.
 {¶ 2} On June 17, 2002, defendant and co-defendant Hyneshia Ponder were indicted pursuant to a four-count indictment. Defendant was indicted for aggravated robbery with firearm specifications and carrying a concealed weapon, and Ponder was indicted for complicity to aggravated robbery and obstruction of justice. Defendant pleded not guilty to the charges and the matter against him proceeded to a bench trial on October 21, 2002.
 {¶ 3} For its case against defendant, the state presented the testimony of Gregory Johnson, Patrick Sullivan, and Cleveland Police Officers Fred Moen, Jr., William Cunningham and Joseph Daugenti.
 {¶ 4} Gregory Johnson testified that at night on February 26, 2002, he was walking in the area of East 135th Street and Kinsman Road and observed a dark blue Ford Focus drive by. A few minutes later, he saw the car parked on the street and saw three men standing in a driveway. He passed the men and they accosted him, hit him in the head with a gun and demanded money. Johnson produced six dollars from his pocket, but the men demanded more money and kicked, stomped and threatened to kill him. According to Johnson, the men had a dark black .32 or .38 revolver. They took $900 from his pocket and fled in the Ford Focus, which had a "God Bless America" sticker on the rear bumper.
 {¶ 5} Johnson saw Patrick Sullivan driving by and asked him to chase after the assailants. Sullivan and Johnson followed after the speeding Ford Focus and also called 911. They lost the car near Livingston Avenue but they spotted a police car at a nearby gas station and reported the incident to Cleveland Police Sergeant Fred Moen, Jr.
 {¶ 6} A short time later, a Ford Focus was stopped in the area of Cedar Road and East 100th Street. Johnson testified that he identified the car and the weapon which the men had used. He could not identify defendant, however.
 {¶ 7} Sullivan testified that some time after 9:00 p.m., he was traveling to his home near East 135th Street and Kinsman Road. He saw Johnson getting up from the ground. Johnson told him that he had been robbed by three men in a Ford Focus and asked Sullivan to chase the vehicle. Sullivan and Johnson chased the speeding Ford Focus. They lost sight of the car after a few minutes then flagged down a police officer.
 {¶ 8} Officer Fred Moen, Jr. testified that after Johnson flagged him down, he broadcast a description of the car. A few minutes later, he received a call that another unit had stopped a dark blue Ford Focus at Cedar and East 100th Street and that the three occupants had begun to flee. Moen recovered a revolver from the car and Johnson positively identified the car and the weapon.
 {¶ 9} Officer William Cunningham testified that he spotted the vehicle and observed it as it turned into a driveway. The occupants of the car then began to flee. Cunningham's partner focused on the driver of the car and followed as this man fled. Cunningham trained his weapon on the front seat passenger, whom he identified as defendant. Cunningham testified that he ordered defendant to return to the vehicle but defendant fled and Cunningham eventually lost him. Cunningham later identified defendant from a photo array, and again in court.
 {¶ 10} Det. Joseph Daugenti testified that, a few hours after the robbery, co-defendant Hyneshia Ponder reported that her Ford Focus had been stolen. Daugenti interviewed Ponder and she stated that she had loaned it to Darryl Mitchell but she did not know where he lived or how to contact him. She told Daugenti that Mitchell called Ponder on her sister's cell phone and said that he was on the run from police, had abandoned the car, and told her to tell police that it had been stolen.
 {¶ 11} Det. Daugenti subsequently learned that Ponder was defendant's girlfriend and that she had picked him up at the Richmond Heights Police Station at around 8:40 p.m. on February 26, 2002. He further established that the gun recovered from the car was operable.
 {¶ 12} Defendant testified on his own behalf and also offered the testimony of Veronica Walters, Romero Walters, Kimberly Ponder, and Det. Daugenti as if on cross-examination.
 {¶ 13} Veronica Walters testified that she lives at 4510 Storer Avenue with her brother Romero Walters, and Kimberly Ponder, the sister of co-defendant Hyneshia Ponder, and that Kimberly, Hyneshia, and Romero went to the Richmond Heights Police Station to get defendant at around 7:30 p.m. on February 26, 2002. They returned at around 9:30 with defendant. The group brought alcohol and remained at the house for the remainder of the evening.
 {¶ 14} Romero Walters testified that, after leaving the police station, they stopped to get groceries and liquor then returned to the Storer Avenue home. Defendant left the home briefly to go to a convenience store then remained there for the rest of the evening.
 {¶ 15} Kimberly Ponder also testified that defendant was at the Storer Avenue home for all but a few minutes when he went to a convenience store.
 {¶ 16} Defendant testified that, in February 2002, he was employed at the Holiday Inn on Rockside. He stated that he was incarcerated in Richmond Heights for two days and that in the evening of February 26, 2002, Romero Walters, Kimberly Ponder and his girlfriend, Hyneshia Ponder picked him up at the station, bought some liquor, and drove him to the Storer Avenue home where they remained all evening. The Ford Focus was not there at this time.
 {¶ 17} Det. Daugenti testified that he called the numbers in the log of Kimberly Ponder's cell phone to locate Darryl Mitchell. One of the persons to whom he spoke claimed that Mitchell was at work. Daugenti also testified that he made calls to locate James Penland, and spoke to someone who claimed to be Penland. Det. Daugenti then reviewed in court a document which purported to be mobile phone information for a phone belonging to James Penland, which lists calls to Kimberly Ponder's telephone.
 {¶ 18} Hyneshia Ponder testified that Darryl Mitchell is also known as James Penland. She claimed that she loaned her car to Penland, that he called her on her sister's cell phone and said that he had been chased by police. Ponder testified that she filed a false police report to indicate that her vehicle had been stolen in order to protect Penland, a.k.a. Mitchell.
 {¶ 19} Defendant was convicted of the charges against him and sentenced to a three year term of incarceration for the aggravated robbery conviction plus three years for the firearm specifications, and a concurrent six month term of incarceration for carrying a concealed weapon. He now appeals and assigns two errors for our review.
 {¶ 20} Defendant's first assignment of error states:
 {¶ 21} "The verdict was against the manifest weight of the evidence."
 {¶ 22} Within this assignment of error, defendant insists that his conviction must be reversed because he was released from Richmond Heights jail less than two hours before the offenses occurred and he presented four alibi witnesses. He further maintains that he was employed and therefore had no motive to commit the offense, and that Officer Cunningham's identification of him should not be credited. Finally, defendant maintains that Ponder established that she loaned her vehicle to Darryl Mitchell, a.k.a. James Penland. Mitchell told her that he was fleeing police and to file a false police report, and that Ponder made telephone calls to Penland from her sister's cellular telephone.
 {¶ 23} In determining whether a verdict is against the manifest weight of the evidence the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts, in the evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380,387, 678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 38,42, 72 L.Ed.2d 652, 102 S.Ct. 2211. Accord State v. Otten (1986),33 Ohio App.3d 339, 340, 515 N.E.2d 1009. An appellate court must use discretion and only reverse convictions in extraordinary cases where the evidence clearly weighs in favor of reversal. State v. Thompkins, supra.
 {¶ 24} We further note that circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned; all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492.
 {¶ 25} Moreover, where one has aided or abetted in the commission of an offense, he may be charged under the complicity statute or the principal offense. R.C. 2923.03(F). To "aid" is to assist; to "abet" is to incite or encourage. State v. Sims (1983), 10 Ohio App.3d 56, 58,460 N.E.2d 672. Participation in criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed. State v. Cartellone (1981), 3 Ohio App.3d 145, 150,444 N.E.2d 68. Evidence of aiding and abetting another in the commission of a crime may be established by both direct and circumstantial evidence. Id. Any encouragement, assistance, counseling, or command is sufficient. 3 Katz Gianelli, Criminal Law (1996) 236, Section 92.5, citing State v. Taylor (1993), 66 Ohio St.3d 295, 612 N.E.2d 316.
 {¶ 26} Finally, flight, unless satisfactorily explained, tends to show a consciousness of guilt or a guilty connection with the crime.State v. Taylor, 78 Ohio St.3d 15, 27, 1997 Ohio 243, 676 N.E.2d 82
quoting State v. Eaton (1969), 19 Ohio St.2d 145, 249 N.E.2d 897, paragraph six of the syllabus; State v. Hambrick (Feb. 1, 2001), Cuyahoga App. No. 77686. Accord State v. Wilson (1988), 47 Ohio App.3d 136,140-141, 547 N.E.2d 1185.
 {¶ 27} In this case, Gregory Johnson testified that three attackers acting in concert robbed him, beat him with a .32 or .38 dark black revolver and threatened to kill him. They then fled in a blue Ford Focus with a sticker on the back that said "God Bless America." Johnson also established that this was the vehicle stopped by police a short time later near the area of Cedar and East 100th Street. Officer Cunningham positively identified defendant as one of the three occupants of this Ford Focus. Cunningham further testified that defendant fled the scene when the vehicle was stopped, and that the other two occupants of the car also fled. In the absence of an explanation, this evidence tended to show a consciousness of guilt or a guilty connection with the crime. The state's evidence further demonstrated that the car belonged to defendant's girlfriend, co-defendant Hyneshia Ponder, that defendant was with her shortly before the offenses, and that she had falsely reported the car as stolen a few hours later. From the foregoing, the car and gun were directly linked to the aggravated robbery, and defendant was directly linked to the car and gun. Accordingly, compelling evidence linked defendant to the offenses. Moreover, the fact that defendant had been released from jail hours before Officer Cunningham positively placed him in the Ford Focus and the fact that he was employed at the time of the offenses do not seriously undermine the strength of the state's case, given that defendant was with Hyneshia Ponder at the time of his release and the assailants fled in her Ford Focus. Likewise, the alibi witnesses are all connected to defendant and co-defendant Hyneshia Ponder and Ponder admittedly lied to the police. Defendant's attempts to implicate Mitchell are also unavailing. Apart from the fact that defendant's claim rested upon the premise that Mitchell was actually James Penland, the state proved that the offense was committed by three men acting in concert. The trial court did not lose its way and did not create a manifest miscarriage of justice in convicting defendant of the offenses. The convictions are not against the manifest weight of the evidence.
 {¶ 28} The first assignment of error is without merit.
 {¶ 29} Defendant's second assignment of error states:
 {¶ 30} "The evidence was insufficient as to the charge of carrying a concealed weapon."
 {¶ 31} When reviewing the sufficiency of the evidence, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Statev. Thompkins (1997), 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541.
 {¶ 32} As noted previously, direct evidence linked defendant to the car and gun, direct evidence linked the car and gun to the offenses, and evidence linked defendant to the offenses. In addition, the victim testified that he initially observed the men standing in a driveway as he walked to his aunt's home. No gun was visible. Moments later, the men acting in concert beat the victim with a gun and robbed and threatened him. The gun was then found hidden in the vehicle. From this evidence, we conclude that a rational trier of fact could have determined that defendant was guilty of carrying a concealed weapon by acting in concert with and aiding and abetting two others in the commission of the aggravated robbery with a firearm. Accord State v. Atkinson (Feb. 23, 1995), Cuyahgoa App. No. 58605; State v. Congeni (1981), 3 Ohio App.3d 392,445 N.E.2d 698.
 {¶ 33} Defendant's conviction for carrying a concealed weapon is supported by sufficient evidence. The second assignment of error is without merit.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs
PATRICIA ANN BLACKMON, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR.