JOURNAL ENTRY and OPINION
{¶ 1} Appellant, Larry Anderson ("appellant"), was convicted of illegally transporting scrap tires and illegally dumping scrap tires in violation of R.C. 3734.03 and 3734.83(A) and sentenced to two years in prison.
 {¶ 2} On at least four occasions throughout 2001, appellant, without a license, hired others to assist him in loading and dumping scrap tires. In February 2001, appellant approached Jules Thomas ("Thomas"), a homeless man, and asked Thomas if he wanted to make some money by helping him dump some tires. Thomas agreed, recognizing appellant as the man whom he had assisted in dumping tires previously three or four times. Appellant drove Thomas in a paneled truck that contained tires, went to several tire stores, and picked up more used tires where Thomas would stack them in the back of the truck. Appellant directed Thomas to an abandoned parking lot to dump the tires while appellant stood as a "look out." While Thomas was dumping the tires, the police arrived and arrested him for illegally dumping scrap tires in a parking lot, which was an unlicensed disposal facility. Thomas was later convicted, went to prison, and never received the $40 appellant agreed to pay him. Appellant left the scene.
 {¶ 3} In June 2001, appellant approached another homeless man, Arthur Thomas ("Arthur"), asked him if he had a driver's license, and asked him if he would be willing to rent a U-Haul truck for appellant so that he could move some items with the truck. Arthur stated that he did have a driver's license and would be willing to rent a U-Haul truck for appellant. Using the money appellant gave him, Arthur rented a U-Haul truck and went with appellant as he drove to several tire shops to load scrap tires. Once the truck was loaded, Arthur was paid and dropped off. However, because the U-Haul truck was not returned the next day, Arthur informed U-Haul that he rented the truck for another person. In July 2001, appellant was arrested for driving the U-Haul truck rented by Arthur. Appellant admitted that he hired Arthur to rent the U-Haul for him to load and dump scrap tires. He also admitted that he was in the scrap tire business and that while he knew he needed a license to load and dump scrap tires, he did not have one. The truck was filled with scrap tires that had to be legally disposed of by U-Haul.
 {¶ 4} Appellant, after his release from jail in August 2001, approached Reginald Bryant ("Bryant"), to rent a U-Haul truck for him. Using the money given to him from appellant, Bryant rented a U-Haul truck and accompanied appellant to various locations to load scrap tires onto the truck. After the tires were loaded, appellant asked Bryant if he was interested in making more money by assisting him in dumping the tires. Bryant declined and appellant dropped him off. Bryant contacted U-Haul and discovered that the truck he had rented for appellant had not been returned. Much later, the U-Haul truck, filled with scrap tires, was found. Because he rented the truck, Bryant was prosecuted and convicted of grand theft auto.
 {¶ 5} Then in December 2001, appellant approached Gregory Sutton ("Sutton"), and asked him if he could borrow Sutton's U-Haul truck for $30. Sutton agreed, rode with appellant, and watched appellant load scrap tires onto the back of the truck. Appellant then parked the truck on the street and drove Sutton home in his own car. Later, after Sutton asked appellant if the truck had been returned to U-Haul, appellant informed him that he returned the truck.
 {¶ 6} However, that night, Aaron Smith ("Smith"), owner of Ed's Truck Shop, saw several people dump approximately 200 scrap tires out of the back of a U-Haul truck onto the property of his truck shop. Smith yelled to the people to stop and to load up the tires they dumped, but the people did not. Instead, they drove off in the truck without shutting the rear door. Smith tried to follow the truck in his own car, but by the time he caught up with the truck, the individuals were gone. Smith looked inside the back of the truck and saw additional scrap tires. In addition, Smith looked inside the cab of the truck and found a note that referred to appellant failing to pay someone for loading or dumping scrap tires. Later, it was determined that the U-Haul truck was the same truck rented by Sutton and used by appellant. Again, U-Haul had to legally dispose of the scrap tires found in its truck. Appellant appeals, asserting that his counsel was ineffective at trial. In particular, appellant argues that "other acts" evidence was improperly admitted, that hearsay testimony was improperly admitted, that testimony regarding the harmful environmental effects of scrap tires was prejudicial, that the prosecutor made improper comments during closing argument, and that his counsel failed to move to sever the counts on which appellant was indicted. However, appellant's arguments lack merit.
 {¶ 7} To prevail on a claim for ineffective assistance of counsel, appellant must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Mack, 101 Ohio St.3d 397,2004-Ohio-1526, ¶ 4, 805 N.E.2d 1108 (appellant "must prove that his counsel [was] deficient for failing to raise the issues he now presents and that there was a reasonable probability of success had he presented those claims on appeal.") Appellant's claim for ineffective assistance of counsel will only be sustained if he meets both parts of the Strickland test.
 {¶ 8} First, appellant argues that testimony of how he illegally disposed of scrap tires on numerous other occasions constituted improper "other acts" evidence. Although Evid.R. 404(B) prohibits the admission of "other crimes, wrongs, or acts" to "prove the character of a person in order to show that he acted in conformity therewith," such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Here, appellant's previous arrest and subsequent conviction of illegally transporting and dumping scrap tires after he was found driving the U-Haul truck rented for him by Arthur, goes to the plan used on numerous occasions by appellant to hire others to assist him in either loading and dumping the scrap tires or renting a U-Haul for him to transport the scrap tires. Appellant continued this course of conduct over at least one year and such evidence of "other acts" were properly admitted to demonstrate appellant's grand plan. Moreover, appellant's admission when he was arrested in July 2001 that he was in the scrap tire business and knew he was required to have a license to load and dump scrap tires goes to his knowledge that paying others to assist him in loading and dumping scrap tires was illegal. Despite knowing that he needed a license, appellant continued his illegal activities on at least two subsequent occasions upon his release from jail for the same offense. Because appellant's "other acts" were admitted to prove his plan and knowledge to transport and dump scrap tires without a license, such admission was proper.
 {¶ 9} Second, appellant argues that the testimony from the investigation of special agent, Doug Young ("Young"), from the Bureau of Criminal Investigation, was hearsay. Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." However, police officers' testimonies as to what course of conduct they undertook as a result of conversations engaged in during the course of a criminal investigation is not considered hearsay. SeeState v. White (Apr. 16, 1998), Cuyahoga App. No. 72011; see, also, State v. Thomas (1980), 61 Ohio St.2d 223, 232,400 N.E.2d 401; State v. Congeni (1981), 3 Ohio App.3d 392, 398,445 N.E.2d 698. Young's testimony as to his conversations with Arthur, Bryant, and Sutton — who all testified as to how they were approached by appellant to either rent a U-Haul truck or assist him in loading and dumping scrap tires — were merely part of his criminal investigation and thus, not hearsay.
 {¶ 10} Appellant also argues that the U-Haul records showing Arthur's, Bryant's, and Sutton's rental agreements with U-Haul were inadmissible hearsay because the records custodian could not testify as to the invoices which were also attached to the rental agreements. Instead, appellant asserts that a records custodian is not qualified to testify as to the invoices showing the amount of money U-Haul was billed to legally dispose of the scrap tires. However, Evid.R. 803(6), specifically exempts business records from hearsay as long as the record was made at or near the time by a person with knowledge, the record was kept in the course of a regularly conducted business activity, it was a regular practice of the business to keep such records, and there is testimony from a custodian or other qualified witness to attest to such records.
 {¶ 11} Here, the records custodian of U-Haul testified at trial that the rental agreements U-Haul had with Arthur, Bryant, and Sutton were maintained in their office in the normal course of U-Haul's business. The records custodian also testified that attached to each of the three rental agreements were the invoices showing the amount of money U-Haul was billed to legally dispose of the scrap tires. As the records custodian, he was qualified to testify as to the records he maintains on behalf of U-Haul, including the invoices attached to the rental agreements. Because these business records constituted permissible hearsay, they were properly admitted into evidence.
 {¶ 12} Third, appellant argues that Young's testimony regarding the harmful effects of scrap tires, such as the potential for the West Nile virus and toxic poisoning, was prejudicial. However, the testimony of Young that scrap tires pose a breeding ground for the West Nile virus was certainly relevant to why appellant was charged with these crimes. As a special agent who performs criminal investigations of environmental crimes, Young's testimony simply explained why the law requires a person to possess a proper license to load and dump scrap tires at licensed disposal facilities — to minimize the risk of a breeding ground for the West Nile virus and the risk of toxic poisoning. In light of all the evidence presented at trial, appellant cannot show how Young's relevant testimony unfairly prejudiced him.
 {¶ 13} Fourth, appellant argues that the prosecutor made improper comments during closing argument, such as referring to appellant as a "pervasive hauler of tires" and claiming that the jury heard that no deal was offered to one of the witnesses who admitted to having been involved in illegally disposing of scrap tires. There is nothing in the record before us that shows that the prosecutor referred to appellant as a "pervasive hauler of tires." If the implication was that appellant was a "pervasive hauler of tires," it came only from the prosecutor's recitation of the substantial amount of evidence presented at trial and the description of the numerous times appellant perpetrated his scheme of loading and dumping scrap tires. Such recitation of the evidence is not only permitted during closing argument, it is entirely proper.
 {¶ 14} Appellant also asserts that the prosecutor improperly argued in his closing that one of the witnesses who testified against appellant made no deals in exchange for his testimony. According to appellant, this witness did not expressly testify that he had made no deals in exchange for his testimony; instead, the witness testified that he had been contacted by prosecutors and there was a "chance" that he could also be prosecuted for his involvement. The prosecutor's mere indication in his closing argument that this witness made no deals in exchange for his testimony was a reasonable inference that the jury could have made based on the witness's testimony that there was a "chance" he could be prosecuted. This statement, thus, was proper.
 {¶ 15} Finally, appellant argues that his counsel should have moved to sever the charges in the indictment because they involved four distinct time frames. Although Crim.R. 14 provides that the trial court may sever the charges if it will prejudice the state or the defendant, the nature of appellant's repeated conduct — a continuing scheme to transport and dump scrap tires over the course of one year — almost mandated that the charges be joined in one trial to avoid duplicity and delay. Moreover, there is nothing in the record before us that suggests that appellant was prejudiced by joining the charges in one trial. Appellant simply asserts that severed trials would have "significantly relieved the danger that the jury would find [him] guilty of some counts based on evidence relating to other counts." Without more, however, appellant's assertion is not well-taken.
 {¶ 16} None of appellant's arguments raise to the level of deficient performance on behalf of appellant's counsel. As a result, appellant's first assignment of error is overruled because he cannot satisfy the first prong of the Strickland
test. Likewise, appellant's second assignment of error that the trial court committed plain error by not excluding the "other acts" evidence, the alleged hearsay statements, the alleged prejudicial statements regarding the environmental effects of scrap tires, and the alleged improper comments made by the prosecutor, is also overruled because there was no error in admitting this evidence.
Judgment affirmed.
Anne L. Kilbane, J., Concurring.
 {¶ 17} On this appeal from a jury verdict of conviction following a trial before Judge Timothy McCormick, I concur with the majority opinion but would remand for correction of the sentencing journal entry. The journal entry does not reflect the sentence pronounced during the sentencing hearing where the judge merely stated:
{¶ 18} "I am going to give you two years on each count to runconcurrent to each other.
 {¶ 19} Sheriff to transport, You'll get credit for any timeserved in this case."
 {¶ 20} The journal entry, however, states:
{¶ 21} "Defendant given notice of post release control as partof his prison sentence for the maximum period allowed for theabove felony(s) under R.C. 2967.28.
 {¶ 22} Defendant to pay court costs."
 {¶ 23} Anderson was found guilty on four counts of violating R.C. 3734.83 and one count of violating R.C. 3734.03, both unclassified felonies. R.C. 2967.28 provides for the imposition of post-release control for only classified felonies, i.e., first degree, second degree, etc. It would appear, therefore, that persons found guilty of unclassified felonies are not subject to post-release control following release from prison. In any event, however, by failing to notify Anderson that he "may" or "will" be supervised under R.C. 2967.28 following his prison term, or the sanctions imposed should he violate the terms of the post-release control, such supervision is not part of his sentence.[1]
Similarly, court costs are not part of the sentence.
 {¶ 24} I would remand to correct the journal entry to accurately reflect what was pronounced during the sentencing hearing.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, J., Concurs.
 Kilbane, J., Concurs with separate Concurring Opinion.
[1] R.C. 2929.19 (B)(3).