[Cite as *New Lexington v. McCabe*, 2022-Ohio-3110.]

COURT OF APPEALS
PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| VILLAGE OF NEW LEXINGTON | JUDGES: |
| | Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 21 CA 16 |
| JOSEPH MCCABE | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Municipal Court,
Case No.  CRB 2000510


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      September 1, 2022


APPEARANCES:

For Plaintiff-Appellant

JAMES S. SWEENEY
JAMES SWEENEY LAW, LLC
285 South Liberty Street
Powell, Ohio  43065

For Defendant-Appellee

ADAM T. BARCLAY
NEX LEXINGTON VILLAGE SOLICITOR
111 North Fourth Street
Zanesville, Ohio  43701

*Wise, J.*

**{¶1}** Appellant Joseph McCabe appeals his conviction and sentence entered November 5, 2021, in the Perry County Municipal Court on one misdemeanor count of Assault, following a jury trial.

**{¶2}** Appellee is the Village of New Lexington.

<u>STATEMENT OF THE FACTS AND CASE</u>

**{¶3}** For purposes of this appeal, the facts and procedural history are as follows:

**{¶4}** Appellant Joseph McCabe was charged with one count of Assault, a misdemeanor of the first degree, in violation of R.C. §2903.13, one count of Aggravated Menacing, a misdemeanor of the first degree, in violation of R.C. §2903.21, and one count of Ethnic Intimidation, a misdemeanor of the first degree, in violation of R.C. §2927.12. The charges stem from an incident which occurred on July 5, 2020.

**{¶5}** On September 27, 2021, a jury trial commenced in this matter. The Village presented the testimony of the alleged victim Leon Davis, his wife, Ronda Davis., and Officer David Crate. Appellant presented the testimony of Brenda Johnson, Greg Holman, Carl Finck, Cathy Finck and Charles Williams.

**{¶6}** Leon and Ronda Davis testified to the events they witnessed occur on July 5, 2020, as well as to the relevant events leading up to July 5, 2020.

**{¶7}** Ronda Davis testified that on July 3, 2020, a few kids were on the neighbor's pool deck, yelling "oh, oh, monkeys" at her and Mr. Davis. *Id.* at 102-103. Mr. Davis then yelled back at the kids "go get your fucking mom." T. at 103. She further testified that on July 5, 2020, when she and Leon Davis were returning home from the grocery store, there was a group of men in the neighbor Carl Finck's garage who were all watching them and

staring at them. T. at 104. She testified that as she was getting out of the car she heard yelling and saw that the group of men were coming toward them, with Appellant Joseph McCabe calling her a "nigger loving bitch" and telling her that if she ever said anything to his kids again he would kill her. T. at 105. She stated that Leon Davis then got in between her and McCabe and that McCabe swung at Mr. Davis but that Mr. Davis moved so the swing missed. *Id.* She recalled that the other men in the group were yelling "get that nigger, Joey, get that nigger." T. at 105-106. She stated that she saw McCabe hit Leon's leg and the two men fell to the ground and began fighting on the ground. T. at 122. At that time, she said Leon was able to strike McCabe, but that Carl Finck and Charles Williams both joined in the fight against Leon. T. at 121.

{¶8} Leon Davis testified that on July 5, 2020, as he was getting groceries out of his vehicle, he heard his neighbor, Joseph McCabe, call his wife a "nigger lovin' bitch" and yell "don't ever say nothing to them kids or I'll kill you" because of the event that occurred between the kids on the neighbor's pool deck and Mrs. Davis on July 3, 2020. T. at 57-59. As Defendant-Appellant was yelling this at Mrs. Davis, McCabe was "tearing off his shirt" and coming towards Mr. and Mrs. Davis. *Id.*

{¶9} McCabe then swung at Mr. Davis. *Id.* Mr. Davis was able to duck and move out of the way of the punch. *Id.* Mr. Davis then yelled at McCabe regarding him teaching his children to be racist. T. at 59. McCabe replied, "you are a monkey, nigger." T. at 60. He recalled that McCabe swung at him again and missed, and that he smelled liquor on him. T. at 60. He stated that when he saw McCabe coming toward him and the other men following him and cheering him on saying "get the nigger, get him, Joey, get him", he grabbed an ice scraper out of the hatchback of his car and "held it as if to slash." T. at 60.

He recalled that he told McCabe, "look, man, you need to go back up in the garage you came out of. Y'all have been drinking all night. You don't know what you are doing. I'm 65 years old. My wife is 60, dude. We are on Social Security. We don't bother nobody. Get out of here", but "[t]hat didn't happen." T. at 60. He stated that McCabe's friends grabbed McCabe and Davis' wife grabbed the ice scraper and he thought that was the end of it. T. at 61. Davis recalled that his wife then yelled "watch out" and McCabe was swinging at him. *Id.* He stated that swing missed but that when he saw McCabe and the other men coming toward he and his wife, he grabbed a brick from his flower bed because he thought they were going to be attacked. *Id.* He stated that he got his wife out of the way and that his fear is that he was going to die because this is not going to be a normal fight with just him against the group of men. T. at 62.

{¶10} Davis stated that he weaved and McCabe's first swing missed. T. at 62. He stated that when McCabe came at him again, he swung back and hit him with his fist. *Id.* He stated that McCabe came at him again. He hit him again and McCabe fell to his knees. T. at 63. McCabe then tackled Davis, but Davis was able to flip McCabe off of him and roll him over on his back. *Id.* He testified that he then swung at McCabe and hit him in the back of the head three times with his fist, and that he had a ring on one of his fingers. T. at 63-64. Davis recalled that at that time Charles Williams grabbed him from behind and was "trying to tear my throat out." T. at 64. He stated that he elbowed Williams and then Carl Finck "socked" him in the mouth, knocking out one of his teeth. T. at 65. He recalled that Williams was still choking him, and then McCabe hit him twice in the side of the head and jaw and that he fell to the ground. T. at 65-67. Once he was on the ground, Carl Finck began stomping on his thigh, and Williams was kicking him from behind. *Id.* He recalled

thinking, "I'm going to die right here" when he heard his wife yell "the police are on their way", causing the men to run away. T. at 65-66. After the men left, Davis called the police, and Officer David Crate arrived at Mr. Davis' residence about 20 minutes later. T. at 66-67.

{¶11} Officer David Crate, of the New Lexington Police Department, testified that he responded to a call at the residence of Leon Davis located at 910 Johnson Avenue, where he was advised an assault had occurred. T. at 126. Upon arriving at the scene, Officer Crate observed that "Mr. Davis had blood in his mouth, around his gums, had blood and a cut on - on his index finger." *Id.* Mr. Davis told Officer Crate that "[Joey McCabe attacked him there at the residence." *Id.*

{¶12} Brenda Johnson testified that on July 5, 2020, she went outside because she heard yelling and she saw Joseph McCabe and Leon Davis arguing, and witnessed McCabe go towards Davis swinging. T. at 138, 152. She stated that McCabe appeared to be "pretty well sloshed" and inebriated" and that he "couldn't hit nothing." T. at 138, 145. She stated that she saw Davis pick up a brick and start beating McCabe in the head with it. T. at 139. She recalled that her son-in-law, Charles Williams, then went over and got Davis off of McCabe and stopped the fight. T. at 139, 142. She testified that Williams "put a pressure point on him and he let go." T. at 142, 145. She also stated that she witnessed Ronda Davis strike McCabe with a "wiper stick." *Id.*

{¶13} Greg Holman testified that on July 5, 2020, he witnessed a fight between Joseph McCabe and Leon Davis. T. at 157. He recalled seeing Ronda Davis strike McCabe over the head with an ice scraper she got out of the car. *Id.* He also recalled seeing Leon Davis hit McCabe in the head with a brick and seeing Charles Williams pull

Leon off of McCabe. T. at 157-158. Holman admitted that he did not witness the beginning of the altercation between McCabe and Leon Davis. T. at 158, 162.

{¶14} Carl Finck exercised his fifth amendment rights against self-incrimination when he was called to testify. (T. at 165-167).

{¶15} Cathy Finck, Carl Finck's wife, testified that on the day in question, she walked around the side of her house and saw Leon Davis with a brick in his hand and McCabe holding his head. T. at 169, 171. She also said she saw Leon Davis strike McCabe in the head with the brick. T. at 171, 173. She said she also saw Leon's wife "beating Joe in the back of the head" with an ice scraper. T. at 171, 173. She stated that she did not see anything that occurred prior to this time. T. at 170, 172, 174. She also testified that she saw Charles Williams pull Leon Davis off of McCabe. T. at 172-173.

{¶16} Charles Williams was the last witness to testify. He testified that Carl Finck is his brother-in-law. T. at 180. He recalled that he saw Ronda Davis grab an ice scraper and start beating McCabe with it, and then Leon Davis grabbed a paver brick from his yard and "busted [McCabe] in the head with the brick and kept hitting him with it." T. at 178. He stated that he went over and pulled Davis off of McCabe and Davis bit him. T. at 179. Williams also stated that he did not see the beginning nor all of the fight between Davis and McCabe. T. at 183-184.

{¶17} On September 27, 2021, following deliberations the jury found Appellant Joseph McCabe guilty of one count of Assault, a misdemeanor of the first degree, not guilty of Aggravated Menacing, and not guilty of Ethnic Intimidation.

{¶18} On October 4, 2021, a sentencing hearing was held. At said hearing the trial court sentenced Defendant-Appellant to a period of One Hundred Eighty (180) days in

jail, with One Hundred Seventy (170) days suspended on the conditions that the Defendant-Appellant be placed on intensive probation for a period of Two (2) years; comply with any and all general orders and terms provided by his probation officer; obtain and complete a drug and alcohol assessment, racial sensitivity counseling, and anger management counseling, and follow the recommendations of said assessments; pay restitution in the amount of Two Thousand Five Hundred Thirty-Eight Dollars ($2,538.00) to victim, Leon Davis; and cause the court costs to be paid.

{¶19} It is from this judgment entry that Appellant now appeals, assigning the following errors for review:

ASSIGNMENTS OF ERROR

{¶20} "I. THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT AGAINST. THE APPELLANT WHEN THE JUDGMENT WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶21} "II. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT PERMITTED INADMISSIBLE HEARSAY AGAINST APPELLANT.

{¶22} "III. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ORDERED APPELLANT TO PAY RESTITUTION IN THE AMOUNT OF $2,538.00.

{¶23} "IV. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL TO A DEGREE THAT APPELLANT DID NOT RECEIVE A FAIR TRIAL."

I.

{¶24} In Appellant's first assignment of error, he argues that his conviction is against the manifest weight of the evidence. We disagree.

**{¶25}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, *supra*, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶26}** Appellant herein was convicted of Assault, in violation of R.C. §2903.13, which provides, "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."

**{¶27}** R.C. §2901.01(A)(3) provides, " 'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration."

**{¶28}** Leon Davis testified that Appellant choked him and hit him in the head and the jaw and knocked him to the ground. T. at 65. Mr. Davis testified that he feared he was "going to die." T. at 62. Mr. Davis further testified that once he was on the ground, Appellant began to kick him. *Id.* Ronda Davis testified that she saw Appellant hit Leon in the leg, causing him to fall to the ground. T. at 122

**{¶29}** Upon review, we find that the testimony of Leon Davis and Ronda Davis alone supports Appellant's assault conviction.

**{¶30}** While Appellant points to inconsistencies in the trial testimony, we defer to the trier of fact as to the weight to be given the evidence and the credibility of the

witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus. Any inconsistencies in the evidence were for the trial court to resolve. *State v. Dotson*, 5th Dist. Stark No. 2016CA00199, 2017-Ohio-5565, ¶ 49.

**{¶31}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Johnson*, 5th Dist. Stark No. 2014CA00189, 2015-Ohio-3113, ¶ 61, citing *State v. Nivens,* 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). The jury need not believe all of a witness' testimony, but may accept only portions of it as true. *Id.*

**{¶32}** "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." *State v. Delevie*, 5th Dist. Licking No. 18-CA-111, 2019-Ohio-3563, ¶ 30, appeal not allowed, 158 Ohio St.3d 1410, 2020-Ohio-518, 139 N.E.3d 927, citing *State v. Brindley*, 10th Dist. Franklin No. 01AP-926, 2002-Ohio-2425, 2002 WL 1013033, ¶ 16.

**{¶33}** In the instant case, the jury was free to weigh all of the evidence, including Appellant's witness' testimony, accordingly. *State v. Spiess*, 5th Dist. Licking No. 19-CA-106, 2020-Ohio-4376, ¶ 27.

**{¶34}** While inconsistencies in the testimony do exist, this Court must afford the decision of the trier of fact concerning credibility issues the appropriate deference. We will not substitute our judgment for that of the trier of fact on the issue of witness credibility unless it is patently clear that the fact finder lost its way. *State v. Ahmed*, 5th Dist. No.

2007-CA-00049, 2008-Ohio-389, 2008 WL 307711, ¶ 28 citing *State v. Parks*, 3rd Dist. No. 15-03-16, 2004-Ohio-4023, at ¶ 13, citing *State v. Twitty*, 2nd Dist. No. 18749, 2002-Ohio-5595, at ¶ 114.

**{¶35}** Upon review of the record it is not patently clear that this jury lost its way in making its credibility determinations, nor was the result so unreliable as to create a manifest miscarriage of justice. We therefor find Appellant's conviction is not against the manifest weight of the evidence.

**{¶36}** Appellant's first assignment of error is overruled.

## II.

**{¶37}** In Appellant's second assignment of error, he argues that the trial court erred in permitting hearsay evidence. We disagree.

**{¶38}** "The trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." *State v. Issa,* 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001). An abuse of discretion is more than a mere error in judgment; it is a "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).

**{¶39}** Specifically, Appellant asserts that statements made by Leon Davis and Ronda Davis regarding events which took place three days prior to the assault in this case were impermissible hearsay.

**{¶40}** Initially, we note that Appellant did not object to these statements at trial. The Ohio Supreme Court has held that "when a defendant has not raised an objection at

trial, plain-error review applies. *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Under the Ohio Rules of Criminal Procedure, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Ohio Crim. R. 52. "To prevail under the plain-error standard, a defendant must show that an error occurred, that it was obvious, and that it affected his substantial rights." *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, citing *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Furthermore," ... an error affects substantial rights under Crim.R. 52(B) only if it affects the outcome of the trial." *Id.*

**{¶41}** We take "[n]otice of plain error * * * with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long,* 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

*Hearsay*

**{¶42}** The Ohio Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Thus, "[t]o be hearsay, *506 testimony must meet a two-prong test: it must concern an out-of-court statement, and it must be offered to prove the truth of the matter asserted. * * * If either element is not present, the statement is not hearsay." *State v. Menefee,* 10th Dist. No. 95APA03–266, 1995 WL 571428 (Sept. 29, 1995), citing *State v. Maurer,* 15 Ohio St.3d 239, 262, 473 N.E.2d 768 (1984).

**{¶43}** "Out-of-court statements offered for reasons other than the truth are not hearsay." *State v. Willis,* 8th Dist. No. 97077, 2012-Ohio-2623, 2012 WL 2150334, ¶ 11, citing *State v. Freeman,* 8th Dist. No. 85137, 2005-Ohio-3480, 2005 WL 1581105, ¶ 40,

citing *State v. Lewis,* 22 Ohio St.2d 125, 132–33, 258 N.E.2d 445 (1970). For example, "[b]ecause testimony offered to explain a witness' actions is not offered to prove the truth of the matter asserted, such testimony is not hearsay." *Menefee,* citing *State v. Congeni,* 3 Ohio App.3d 392, 398, 445 N.E.2d 698 (8th Dist.1981). " '[E]xtrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed.' " *Id.,* quoting *State v. Thomas,* 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980).

**{¶44}** At trial Mr. Davis testified regarding an incident that allegedly occurred two days prior to the altercation on July 5th, when some of the neighborhood children, including the son of Carl Finck, allegedly made racist comments towards Mr. Davis and his wife.

**{¶45}** Mr. Davis testified: "… my wife said, didn't you hear what they said? I said no. What did they -- what were they saying? I said, I heard something about, oh, look. She said, they were saying, oh, look at the monkeys". T. at 58.

**{¶46}** He also testified that "[a]ll of a sudden, Carl Finck's son, the youngest, comes back and yells, oh, look at the monkey, trying to grab his shirt, when I turned around. And I yell -- excuse my French -- go get your fucking mother. Because now I know what you two -- all these kids were doing was speaking racially to me and my wife" *Id.* T. at 58-59.

**{¶47}** Later at trial, Mrs. Davis also testified regarding this incident, stating that "… when we got out the car, they were yelling and laughing. And they had gotten down after they'd say it, but they was yelling, oh, oh, monkeys, ha, ha, ha and laughing and dunking down and looking right at us" and that "one of them -- the little boy come flying back out

of the garage to grab his shirt or something off the table and he yelled the same thing; oh, oh, monkeys." T. at 102-103.

**{¶48}** Upon review we find that the statements made by Mr. and Mrs. Davis describing the incident which occurred two days prior to this incident were not offered to prove that Appellant committed any of the crimes he was charged with for the events which occurred on July 5th. Therefore, the were not "offered in evidence to prove the truth of the matter asserted" and do not qualify as hearsay statements.

**{¶49}** Appellant's second assignment of error is overruled.

**III.**

**{¶50}** In Appellant's third assignment of error, he argues that the trial court abused its discretion in ordering restitution in the amount $2,538.00. We disagree.

**{¶51}** Under Ohio law, a trial court may order " ... restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss." R.C. §2929.18(A)(1), which governs restitution orders:

(A) Except as otherwise provided in this division and in addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section or, in the circumstances specified in section 2929.32 of the Revised Code, may impose upon the offender a fine in accordance with that section. Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:

(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount. All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender.

**{¶52}** We review restitution orders under an abuse of discretion standard. *See, e.g., State v. Sheets*, 5th Dist. Licking No. 17 CA 44, 2018-Ohio-996, ¶ 15; *State v. Cook*, 5th Dist. Fairfield No. 16-CA-28, 2017-Ohio-1503, ¶ 8; *State v. Andrews*, 5th Dist. Delaware No. 15 CAA 12 0099, 2016-Ohio-7389, ¶ 40. An order of restitution must be supported by competent and credible evidence from which the trial court can discern the

amount of restitution to a reasonable degree of certainty. *State v. Spencer*, 5th Dist. Delaware No. 16 CAA 04 0019, 2017-Ohio-59, ¶ 44 (Citations omitted). Furthermore, a trial court abuses its discretion if it orders restitution in an amount that does not bear a reasonable relationship to the actual loss suffered. *Id.* (Citations omitted).

**{¶53}** Appellant herein contends the trial court erred in basing the amount of restitution on the victim's testimony, arguing the $2,538.00 figure was not supported by documentary evidence.

**{¶54}** The evidence which supports a court's restitution order "can take the form of either documentary evidence or testimony." *State v. Jones*, 10th Dist. No. 14AP-80, 2014-Ohio-3740, ¶ 23 (Citation omitted). Thus, "a restitution order may be supported by the victim's testimony alone without documentary corroboration." *State v. Jones*, 10th Dist. No. 15AP-45, 2015-Ohio-3983, ¶ 16 (Citation omitted). Accord, *State v. McClain*, 5th Dist. No. 2010 CA 00039, 2010-Ohio-6413, ¶ 34 (observing "R.C. 2929.18(A)(1) allows the trial court to rely upon the amount of restitution recommended by the victim, and does not require written documentation"); *State v. Graham*, 2d Dist. No. 25934, 2014-Ohio-4250, ¶ 57 (stating the "testimony of a victim, if determined to be credible, is sufficient to support a restitution order; no documentation is required to substantiate the victim's testimony").

**{¶55}** Upon review, we find there was competent and credible evidence to support the amount of restitution imposed by the trial court under R.C. §2929.28(A)(1).

**{¶56}** At the sentencing hearing, Leon Davis informed the court that his eye glasses and two of his teeth were broken in the fight and that he had dental bills and

prescription eye glass bills which were not completely covered by insurance, Sent. T. at 11-13. Documentary evidence was provided to the trial court supporting the following:

Trillium Vision Care/Vision Source – Progressive, Transitions, Polycarbonate – lens replacement $373.00

Perry County Dental Group: Dental bill (broken teeth) $ 850.00 (only $670.00 requested)

Repair estimate (Diamond ring) $35.00

Repair estimate (Gold and onyx ring) $125.00

Repair estimate (Gold chain) $130.00

Repair estimate (setting and diamond/antique ring) $1,250.00

Total: $2,583.00

(Victim's Restitution Request/Bills, Record at 27)

**{¶57}** As set forth above, R.C. §2929.18(A)(1) allows a trial court to rely upon the amount of restitution recommended by the victim and does not require written documentation. Here, we have testimony and documentation provided by the victim to the court to support the restitution order. Based on the foregoing, we find the trial court did not abuse its discretion in ordering Appellant to pay the amount of $2,538.00 in restitution.

**{¶58}** Appellant's third assignment of error is overruled.

**IV.**

**{¶59}** In Appellant's fourth assignment of error, he argues that he was denied the effective assistance of counsel. We disagree.

**{¶60}** To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687– 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052.

**{¶61}** Because there are countless ways to provide effective assistance in any given case, judicial scrutiny of a lawyer's performance must be highly deferential. *Strickland*, 466 U.S. 668 at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690. "Decisions on strategy and trial tactics are granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers." *State v. Quinones*, 8th Dist. Cuyahoga No. 100928, 2014-Ohio-5544, ¶ 18.

**{¶62}** "Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

**{¶63}** Appellant herein argues that defense trial counsel should have objected to the hearsay statements made by Mr. and Mrs. Davis concerning the events which occurred three days prior.

**{¶64}** Initially, we note that " 'The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.' " *State v. Fears*, 86 Ohio St.3d 329, 347, 715 N.E.2d 136 (1999), *quoting State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831(1988). *Accord, State v. Hale*, 119 Ohio St.3d 118, 2008–Ohio–3426, 892 N.E.2d 864, ¶ 233. A defendant must also show that he was materially prejudiced by the failure to object. *Holloway*, 38 Ohio St.3d at 244, 527 N.E.2d 831.

**{¶65}** Further, based on our disposition of assignment of error III, we find that such testimony did not constitute impermissible hearsay.

**{¶66}** Finally, we find that based on the other testimony at trial concerning the assault, Appellant has failed to show how such testimony affected the outcome of the trial. As such, we find Appellant did not receive ineffective assistance of trial counsel.

**{¶67}**  Appellant's fourth assignment of error is overruled.

**{¶68}**  The judgment of the Perry County Municipal Court is affirmed.


By: Wise, J.

Gwin, P. J., and

Hoffman, J., concur.


JWW/kw 0830